```
                    UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF PENNSYLVANIA
```

**PHUC HUU NGUYEN,**                :

      **Petitioner**                :   **CIVIL ACTION NO. 1:09-2211**

   **v.**                :   **(CALDWELL, D.J.)**
                                            **(MANNION, M.J.)**

**UNITED STATES CITIZENSHIP &**    :
**IMMIGRATION SERVICES and**
**DEPARTMENT OF HOMELAND**          :
**SECURITY,**
                                   :
      **Respondents**
                                   :

## **REPORT AND RECOMMENDATION**[1]

The petitioner, currently an inmate at the Cibola County Correctional Center, Milan, New Mexico[2], filed the instant action on November 10, 2009, (Doc. No. 1), along with a motion for writ of mandamus, (Doc. No. 2). On November 30, 2009, the proper filing fee was received. (Doc. No. 6). An order to show cause followed on February 2, 2010. (Doc. No. 7). After having been granted an extension of time to do so, (Doc. No. 10), on March 26, 2010, the respondents filed a response to the petition, (Doc. No. 15). The

---

    [1]For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

    [2]At the time he initiated the instant action, the petitioner was confined at the Low Security Correctional Institution at Allenwood, White Deer, Pennsylvania.

petitioner filed a traverse on April 8, 2010. (Doc. No. 16)³. Included in the petitioner's traverse was a request to submit additional evidence relating to his claim of naturalization. As a result, on April 15, 2010, the respondents filed a motion for leave to file a supplemental response should the petitioner be allowed to submit additional evidence, (Doc. No. 18), along with a brief in support thereof, (Doc. No. 19).

Upon review of the instant action, the petitioner seeks a declaratory judgment pursuant to 8 U.S.C. §1503(a) that he is a naturalized citizen based upon an application which was filed by his father in 1984, eight years prior to the petitioner's eighteenth birthday. In the alternative, the petitioner seeks to bring the instant action as a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241.

By way of relevant factual background⁴, the petitioner was born in Vietnam in 1974 to Thao Huu Nguyen, the petitioner's father, and Thuong Nguyen, the petitioner's mother. (Doc. No. 15, Exs. A, B). Both of the petitioner's parents were born in Vietnam and were nationals and citizens of

---

³A similar traverse was filed on April 13, 2010, (Doc. No. 17), the only difference being that the initial traverse was signed only by the petitioner, while the subsequent traverse was filed by the petitioner and his father.

⁴The factual background, of which there is no material dispute, has been extracted from the respondents' brief which is accompanied by supporting materials, and supplemented by information provided by the petitioner as necessary.

2

Vietnam before coming to the United States. (Id., Ex. B).

On July 1, 1975, the petitioner, his parents, and his siblings were admitted to the United States as refugees from Vietnam. (Id., Exs. A, B). Subsequently, on August 2, 1978, the petitioner's immigration status was adjusted to that of a lawful permanent resident, said status being retroactive to his date of admission. (Id.).

On July 30, 1984, the petitioner's father filed a Form N-604, Application for a Certificate of Citizenship (Made on Form N-400), with the Immigration and Naturalization Service, Portland, Oregon. (Doc. No. 15, Ex. D).

On October 26, 1984, the petitioner's father filed an Application to File Petition for Naturalization, Form N-400, for himself, on which he indicated that he was requesting a Certificate of Citizenship for the petitioner, as well as his other children. (Id., Ex. C). On November 29, 1984, the petitioner's father became a naturalized United States citizen. (Id., Ex. E).

On April 28, 1995, the petitioner was convicted in the Circuit Court for the State of Oregon, County of Multnomah, for the offense of possession of a controlled substance. (Doc. No. 15, Ex. G). The petitioner was sentenced to probation and court costs. (Id.).

On January 10, 1997, the petitioner was convicted in the Circuit Court for the State of Oregon, County of Multnomah, for the offenses of being a felon in possession of a firearm and possession of a controlled substance.

(Doc. No. 15, Ex. H).

On March 20, 1997, the petitioner was convicted in the Circuit Court for the State of Oregon, County of Clackamas, of two counts of being a felon in possession of a firearm. The petitioner was sentenced to probation on both counts. (Doc. No. 15, Ex. I).

On July 10, 1997, based upon the petitioner's convictions, the Bureau of Immigration and Customs Enforcement, ("ICE"), formerly the Immigration and Naturalization Service, ("INS"), instituted removal proceedings against the petitioner by issuing a notice to appear. (Doc. No. 15, Ex. K). In the notice, it was alleged that the petitioner was not a citizen or national of the United States, but was a citizen or national of Vietnam. In light of his convictions, the petitioner was charged with being removable under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, ("INA"), as an alien who had been convicted of a crime which qualifies as an aggravated felony as defined in the immigration laws, and Section 237 (a)(2)(C), as an alien who had been convicted of a crime that relates to a firearm offense. (Id.).

On September 24, 1998, the petitioner's mother became a naturalized United States citizen. (Doc. No. 15, Ex. F). By this time, the petitioner had already attained the age of eighteen. (Id., Exs. A, B).

By decision dated February 2, 1999, an Immigration Judge, ("IJ"), noted that the petitioner had admitted to all of the allegations set forth in the

previously referenced notice to appear, including the allegation that he was not a United States citizen, but a citizen of Vietnam. The IJ denied the petitioner's application for asylum and ordered him removed to Vietnam. (Doc. No. 15, Ex. L).

On November 15, 2000, the petitioner was convicted in the United States District Court for the District of Oregon of conspiracy to manufacture, possession with intent to distribute, or distribution of methamphetamine. The petitioner was sentenced to a term of imprisonment of 197 months. (Doc. No. 15, Ex. J).

On August 25, 2008, the petitioner filed a Form N-600, Application for Certificate of Citizenship with the United States Citizenship and Immigration Service, ("USCIS"), Philadelphia District Office. (Doc. No. 15, Ex. M). In his application, the petitioner provided "I claim citizenship from my U.S. Citizen father who applied for me when I was a <u>minor</u>. Under 1433(a) only one parent needs to be a citizen for me to derive citizenship." (Doc. No. 15, Ex. M)(emphasis in original).

On October 17, 2008, the petitioner's Form N-600 was denied with the explanation that the petitioner did not meet the requirements of the Child Citizenship Act of 2000, Pub.L.No. 106-395, §103(a), ("CCA"), which allows a child to derive citizenship upon the naturalization of just one parent, if other conditions are satisfied. (Doc. No. 15, Ex. N). The petitioner was advised

that the CCA is not applicable to persons who were eighteen years old before February 27, 2001, the date that the law came into effect. (Id.). The petitioner was found to be subject to §321(a) of the former INA because derivative citizenship is determined by the law in effect at the time the last material condition or critical event is met, and that last material condition would have been the date that the petitioner turned eighteen. Because the petitioner's parents were still married, the petitioner was informed that he would only have qualified for derivative citizenship under former INA §321(a) if both parents had become naturalized before the petitioner turned eighteen. Because the petitioner's mother did not naturalize until after his eighteenth birthday, the petitioner did not meet the INA's statutory requirements for deriving United States citizenship.

On November 25, 2008, the petitioner filed a Form I-290B, Notice of Appeal or Motion, asking USCIS to reopen its decision denying his Form N-600. (Doc. No. 15, Ex. O). The petitioner's motion was denied on February 24, 2009. (Doc. No. 15, Ex. P). In its decision the Philadelphia District Office indicated that the petitioner's father had filed a Form N-604 in 1984, which was never adjudicated, but determined that the petitioner would have been ineligible to derive citizenship in 1984 in any event because his mother had not been naturalized. It was determined, therefore, that the failure to adjudicate the Form N-604 was not prejudicial to the petitioner. The petitioner

6

was informed that his father could have filed a Form N-402, Application to File Petition for Naturalization in Behalf of Child, back in 1984 as an alternative, but that there was no indication that he had done so. It was further indicated that the petitioner never filed a Form N-400, Application for Naturalization, for himself. The petitioner was informed that he would no longer be eligible to file a Form N-400 because he had been convicted of a criminal offense which qualifies as an aggravated felony and would, therefore, statutorily preclude him from being able to establish the requisite good moral character to be eligible to naturalize.

On March 16, 2009, the petitioner filed an appeal to the USCIS Administrative Appeal Office, ("AAO"). (Doc. No. 15, Ex. Q). This appeal was returned to the petitioner with notification that the AAO does not accept direct filings from an adverse District Office decision. (Id., Ex. R).

On or about February 25, 2010, the Philadelphia District Office forwarded the petitioner's appeal to the AAO. (Id., Ex. S). On March 10, 2010, the AAO affirmed the USCIS Philadelphia District Office decision denying the motion to reopen, as well as the District Offices's finding that the petitioner did not derive U.S. citizenship based upon his father's naturalization.

While the petitioner's administrative appeals relating to his Form N-600 were pending, on November 10, 2009, he filed the instant action. Initially, the

petitioner seeks declaratory relief pursuant to 8 U.S.C. §1503(a). Title 8 United States Code Section 1503(a) reads:

> (a) Proceedings for declaration of United States nationality
>
> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28 against the head of such department or independent agency for a judgment declaring him to be a national of the United States, except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such removal proceeding. An action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege and shall be filed in the district court of the United States for the district in which such person resides or claims a residence, and jurisdiction over such officials in such cases is conferred upon those courts.

The respondents argue that the plaintiff cannot bring the instant action pursuant to §1503(a) in light of the first exception contained therein which forecloses individuals from seeking review of a citizenship claim when that claim "arose by reason of, or in connection with any removal proceeding . . . ."[5] (Doc. No. 15, pp. 19-22). The respondents argue that because the petitioner admitted to all allegations in the notice to appear, including allegations that he was not a United States citizen, and it was not until after he was ordered

---

[5] Because the petitioner's removal proceedings have long been concluded, the second exception contained in §1503(a) is not applicable.

removed that he filed his Form N-600 claiming that he derived citizenship from his father, his citizenship claim "arose by reason of, or in connection with" his removal proceeding.

The Fifth Circuit and the Seventh Circuit Courts of Appeals have addressed the application of the exceptions set forth in §1503(a). In Rios-Valenzuela v. Dep't of Homeland Security, 506 F.3d 393 (5th Cir. 2007), the plaintiff had filed an application for citizenship while removal proceedings were pending against him. The plaintiff's application was denied by the District Director. After removal proceedings were terminated, the AAO denied the plaintiff's appeals. Rios subsequently initiated an action under §1503(a) in the United States District Court for the Western District of Texas. The district court dismissed the action for lack of jurisdiction. On appeal, the Fifth Circuit Court of Appeals affirmed. In doing so, the court stated:

> "the exception[6] applies to claims of nationality raised in removal proceedings." It is the context of how the particular issue of citizenship arose rather than the mere timing of events that determines the applicability of §1503(a)(1). The exception precludes jurisdiction over Rios's citizenship claim because his claim "arose by reason of, or in connection with" his removal proceeding: the issue of Rios's citizenship that forms the basis of his claim here originates, at the least, in connection with the removal proceedings.
>
> The N-600 application process is, as Rios argues, a proceeding separate from the removal proceedings. But §1503(a)(1) does not apply depending on whether the proceedings are separate;

---

[6]Referring to the first exception in §1503(a).

rather, it applies when the particular citizenship issue "arose" in the removal proceeding. That is, *the exception focuses on the proceeding in which the particular claim to citizenship originates*, not the proceeding in which it is being pursued.

Id. (footnote omitted; quoting Said v. Eddy, 87 F.Supp.2d 937, 941 (D.Alaska 2000); emphasis added).

More recently, in considering the exceptions set forth in §1503(a), the court in Ortega v. Holder, 592 F.3d 738 (7th Cir. 2010) considered not only the words of the statute, but also the statute's structure and the relationship of the statute to other provisions of the code. In doing so, the court stated:

> We begin with the opening sentence of §1503(a), which states in relevant part: "If any person . . . claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, . . . upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28 . . . declaring him to be a national of the United States." 8 U.S.C. §1503(a). Thus, §1503(a) first provides individuals, who have been denied a benefit of citizenship, with a means of challenging the adverse administrative action in court. Specifically, the individual may bring a declaratory judgment action under 28 U.S.C. §2201.

Id. at 743.

The court went on to discuss the exceptions which do not guarantee the right to bring such an action to every individual who has been aggrieved by an agency action:

> The language of the statute continues: "except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the

10

provisions of this chapter or any other act, or (2) is in issue in any such removal proceeding." 8 U.S.C. §1503(a). Id.

Considering the language of the statute, the Ortega court found that the exceptions, taken together, are designed to protect removal proceedings from judicial interference and preserve 8 U.S.C. §1252 as the exclusive means of challenging a final order of removal. In other words, the court found that an individual cannot attempt to circumvent the Government's effort to remove him by filing an action under §1503 while the removal proceedings are ongoing. Similarly, the court found that an individual may not use §1503(a) to frustrate Congress's effort to channel all appeals from removal proceedings, including those in which the individual raised a claim of nationality, through 8 U.S.C. §1252.

Looking to the procedures that Congress instituted for review of removal proceedings, the Ortega court found that, ". . . it is even more clear that *the jurisdictional exception in §1503(a) was directed only at those individuals whose claims of nationality were being or had been litigated fully in removal proceedings*." Id. at 744 (emphasis added). To this extent, the court noted that Congress initially channeled all appeals from final orders of removal to the courts of appeals by way of 8 U.S.C. §1252(a)(5). Moreover, the court noted that Congress had established a specific procedure for reviewing claims of nationality raised in the context of removal proceedings by way of

§1252(b)(5)(B). Therefore, the court noted that, pursuant to the procedures instituted by Congress, an individual whose claim of nationality is rejected in the context of removal proceedings, and whose claims involves a genuine and material issue of fact, is provided with the same mechanism for redress as set forth in §1503(a).

Considering the above, an individual who wishes to raise a claim of nationality may do so either: (1) by filing an application for citizenship which, if denied through final administrative appeal, could then be pursued by way of §1503(a), or (2) if the issue of nationality is raised initially in the context of removal proceedings, the individual must then pursue the claim through those removal proceedings, which would then result in either a declaration or denial of nationality.

The court in Ortega found that, since the plaintiff had filed her original application for citizenship in the course of her removal proceedings, that application arose as a result of, or in connection with, those proceedings and she would be barred from challenging the administrative denial of the application by way of §1503(a). The court held however that the plaintiff could challenge the denial of her second application for a certificate of citizenship pursuant to 8 C.F.R. 341.6[7], since the second application was filed after the

---

[7]Title 8 C.F.R. §341.6 provides:

(continued...)

12

removal proceedings were terminated, and thus, was "not tainted by its connection to removal proceedings." Id. at 746.

In the case currently pending before this court, the issue of the petitioner's nationality was never raised in or fully litigated during his removal proceedings. In fact, during his removal proceedings, the record provides that the petitioner admitted that he was not a United States citizen, but a citizen of Vietnam. It was not until almost nine years after the IJ ordered the petitioner removed that the petitioner filed his Form N-600 application for citizenship and later exhausted his administrative remedies with respect thereto. Since the issue of the petitioner's nationality was never raised in or litigated in the context of the petitioner's removal proceedings, and those proceedings have long been concluded, the court finds that the petitioner's

---

[7](...continued)
If it is the decision of the district director to deny the application for a Certificate of Citizenship, the applicant shall be furnished the reasons for denial and advised of the right to appeal in accordance with the provisions of 8 C.F.R. §103.3(a). After an application for a Certificate of Citizenship has been denied and the appeal time has run, a second application submitted by the same individual shall be rejected and the applicant instructed to submit a motion for reopening or reconsideration in accordance with 8 C.F.R. §103.5. The motion shall be accompanied by the rejected application and the fee specified in 8 C.F.R. §103.7 reduced by the amount of the fee paid with the rejected application. A decision shall be issued with notification of appeal rights in all Certificate of Citizenship cases, including any case denied due to the applicant's failure to prosecute the application.

13

current action is not jurisdictionally barred by the provisions of §1503(a).

That being said, in considering the petitioner's claim of citizenship, the court agrees with the Government that the petitioner is not entitled to a declaratory judgment pursuant to §1503(a) for several reasons: (1) he did not meet the requirements for deriving citizenship through his parents, (2) no application for naturalization was ever filed on behalf of the petitioner prior to his eighteenth birthday, (3) the petitioner never independently filed an application for naturalization prior to his convictions, and (4) the petitioner would now be unable to file an application for naturalization because he is unable to demonstrate the requisite good moral character in light of his convictions as would be necessary to be naturalized.

Initially, in his traverse the petitioner now concedes that he did not meet the requirements for deriving citizenship through his parents. (Doc. No. 16, p. 1). Therefore, this issue need not be discussed.

Moreover, although the petitioner was ineligible for derivative citizenship in 1984 when only his father was naturalized, upon being naturalized, the petitioner's father could have filed a Form N-402, Application to File Petition for Naturalization on Behalf of a Child. As provided in the Government's materials, once the Form N-402 was received, the INS would then make a determination of the child's eligibility for naturalization which was not automatically granted following the naturalization of the parent.

Again, the petitioner concedes that his father never filed a Form N-402 application for naturalization on his behalf. However, the petitioner claims that his father did not do so because he mistakenly believed that the Form N-604 that he had filed was the proper form for naturalization based, in part, upon the language of the form itself and, in part, because of repeated assurances from individuals at the former INS that his paperwork was in order. Based upon these claimed false assurances, the petitioner asks this court to allow his father to file the correct Form N-402 application, *nunc pro tunc*.

As the court discussed in Hatkewicz v. Attorney General of the U.S., 350 Fed.Appx. 667 (3d Cir. 2009), *nunc pro tunc* literally means "now for then" and "describes an equitable doctrine that 'permits acts to be done after the time they should have been done with a retroactive effect,' . . . , but not when due to circumstances 'attributable to the laches of the parties,' . . ." Id. at 671 (citations omitted).

Here, while the court is sympathetic to the petitioner's circumstances, it is clear that these circumstances are due, at least in part, to the inaction of the petitioner and his family in following through with the application process. The petitioner's father filed the Form N-604 back in 1984 to obtain citizenship for the petitioner and his siblings. The petitioner claims that "[his] father did not assume a silent position during his efforts to naturalize and inquired about the application "[e]verytime he met with the INS employee in charge of his

15

case . . ." However, there is no indication that, after a reasonable period of time, the petitioner's father, who filed the application, went beyond speaking to the same individual and took any affirmative action to assure that his application was proper and being processed. This despite the fact that there was only a one month period between the time that the petitioner's father filed his own Form N-400 application for naturalization and the time that he actually became a naturalized citizen. The petitioner also claims that his mother inquired about the application over the ten year period from 1984 to 1994. In placing blame on the individuals employed by the former INS, the petitioner indicates that "[c]ommon sense dictates that perhaps something was wrong if the same concern is repeated enough times . . ." However, this same "common sense" standard applies to the petitioner and his family. Common sense would dictate that if the petitioner's parents were asking the same individual about the status of the application for an extended period of time with no results, they should have sought/taken other steps to assure that the application was proper and being processed. Even assuming that the INS was partially to blame for the petitioner's situation, the fact that neither the petitioner nor his father, who filed the application, took any affirmative action for a period of approximately twenty-four years, until the petitioner's impending removal, is directly attributable to the petitioner and his father. Therefore, the court should deny the petitioner's request to allow his father to

file the correct Form N-402 application *nunc pro tunc*. See Hatkewicz v. Attorney General of the U.S., supra (petitioner not entitled to citizenship *nunc pro tunc* on unadjudicated Form N-402 application where the petitioner did not inquire about the status of the application until faced with removal fourteen years later).

Should the court not allow the petitioner's father to file a Form N-402 application *nunc pro tunc*, the petitioner asks that he be allowed to introduce evidence that he is not an alien subject to removal, but a national of the United States because he has been in the United States since the age of one, he has never been to any other country or returned to his former country, he applied for the United States Air Force when he was eighteen or nineteen, and all of his family members are now citizens of the United States.

The court should deny the petitioner's request to introduce evidence that he is a national based upon the factors set forth above. The INA defines a "national" as "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States." 8 U.S.C. §1101(a)(22). Obviously, in this case, the petitioner must rely on subparagraph (B) of the statute. In Salim v. Ashcroft, 350 F.3d 307, 310 (3d Cir. 2003), the court held that, for one who is a citizen of another country, "nothing less than citizenship will show permanent allegiance." Id. (internal quotation marks removed). Applying this holding to the facts in the

petitioner's case, it is clear that he is not presently a national regardless of the factors which he has set forth. In addition, given his conviction for an aggravated felony, he is permanently ineligible for citizenship. See id. Therefore, it would be futile to allow the petitioner to submit evidence relating to the above factors.

Related to the petitioner's request to introduce new evidence, the respondents have filed a motion for leave to file a supplemental response should the court grant the petitioner allowance to file additional evidence relating to his claim that he is a national. In light of the foregoing recommendation that the petitioner's request be denied, it is further recommended that the respondents' motion for leave to file a supplemental response be dismissed as moot.

Returning then to the factors which weigh against the granting of relief on the petitioner's declaratory judgment action, the petitioner does not dispute that he never inquired about his citizenship status upon attaining the age of eighteen, nor did he file a Form N-400 application for naturalization on his own behalf.

Finally, in light of the petitioner's current status as a convicted aggravated felon, he is not now able to demonstrate the good moral character required to be eligible for naturalization. See INA §1101(f)(8); 8 C.F.R. §316.10(b)(ii). The petitioner does not dispute this factor.

Based upon all of the above, the petitioner is not entitled to a declaratory judgment pursuant to §1503(a), and the instant action requesting such relief should therefore be denied.

In the alternative to §1503(a), the petitioner seeks relief pursuant to 28 U.S.C. §2241. In his filing, the petitioner has failed to set forth any support for his ability to do so. He merely states:

> Although Petitioner has mostly argued his case pursuant to §1503(a) for a declaratory judgment and the application of collateral/equitable estoppel, he has also filed in the alternative jursidictionally (sic) under 28 U.S.C. §2241 for relief from the USCIS's denial of derivative citizenship.

(Doc. No. 1, p. 15).

As the petitioner has now conceded in his traverse that he is not entitled to derivative citizenship, any attempt to proceed by way of §2241 on the instant action should be dismissed.

As a final matter, with respect to the petitioner's motion for writ of mandamus pursuant to 28 U.S.C. §1361, (Doc. No. 2), that statute provides that judicial review of an agency action is only available when the plaintiff has no other adequate remedy. Stanley v. Hogsten, 277 Fed.Appx. 180 (3d Cir. 2008)(citing Heckler v. Ringer, 466 U.S. 602, 616 (1984)). Because 8 U.S.C. §1503(a) provides an adequate avenue by which the petitioner may challenge the denial of his application for citizenship, the petitioner's motion for writ of mandamus should be denied.

On the basis of the foregoing, it is recommended that:

**(1)** to the extent that the instant action, **(Doc. No. 1)**, is considered pursuant to 8 U.S.C. §1503, it be **DENIED**;

**(2)** to the extent that the instant action, **(Doc. No. 1)**, is considered pursuant to 28 U.S.C. §2241, it be **DISMISSED**;

**(3)** the respondents' motion for leave to file a supplemental response, **(Doc. No. 18)**, be **DISMISSED AS MOOT**;

**(4)** the motion for writ of mandamus, **(Doc. No. 2)**, be **DENIED**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:** May 12, 2010

O:\shared\REPORTS\2009 Reports\09-2211-01.wpd